# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ROBERT ROZMIAREK,** | **8:17CV353** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM** |
| **WALMART STORES, INC.,** | **& ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Walmart Stores, Inc., ECF No. 30. For the reasons stated below, the Motion will be granted, in part.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Defendant, Walmart Stores, Inc., ("Walmart") is an Arkansas corporation licensed to do business in Nebraska. Plaintiff, Robert Rozmiarek, is an individual residing in Douglas County, Nebraska. Rozmiarek had an obvious disability—a leg amputation, which requires him to use a wheelchair. Walmart hired Rozmiarek as a Meat Sales

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

Associate at store #5141 in Omaha, Nebraska, on August 15, 2015. His job duties included customer service; assisting with purchases; promoting products; receiving and stocking merchandise; identifying shrinkage; and making sure food products were rotated, removed if out of date, and handled in a safe manner.

Sherri McCallie was the Meat Department Manager for the duration of Rozmiarek's employment.[2] McCallie Decl., ECF No., 32-4, Page ID 96. Assistant Store Manager Paul Teff was one of Rozmiarek's supervisors from August 15, 2015, to May 2016, when Teff moved to a different department. Assistant Store Manager Robert Plash was one of Rozmiarek's supervisors for the duration of his employment. Payton Goldapp became an Assistant Store Manager in June of 2016.

Construing the facts in a light most favorable to Rozmairek, at the time his employment commenced, Walmart had a policy stating that meat department associates were to wear company-issued coats. McCallie Decl. ECF NO. 32-4, Page ID 97; Teff Decl., ECF No. 32-2, Page ID 89. In May 2016, the policy changed to require company-issued aprons instead of coats. McCallie Decl. ECF NO. 32-4, Page ID 97; Teff Decl., ECF No. 32-2, Page ID 89. Until the aprons arrived at the end of June 2016, meat department associates were required to wear the butcher coats. Def.'s Br., ECF No. 31, Page ID 74; McCallie Decl. ECF NO. 32-4, Page ID 97; Teff Decl., ECF No. 32-2, Page ID 90. In early 2016, Teff talked to Rozmiarek about his inconsistent wearing of a butcher

---

[2] Walmart's Brief in Support of Summary Judgment states that McCallie's employment as Meat Department Manager began in November 2015. ECF No. 31, Page ID 69. For purposes of this Memorandum & Order the exact start date is irrelevant.

coat.[3] Teff Decl., ECF No. 32-3, Page ID 90. During the conversation, Rozmiarek informed Teff that the coat sometimes got caught in his wheelchair. *Id.* Teff testified that he told Rozmiarek to submit an accommodation request through Human Resources if needed. *Id.* Rozmiarek disputes this assertion and testified a pharmacy coat was discussed and that "[Teff] told [him] not to worry. You know, if it's getting caught up and causing [him] problems, don't wear it." Rozmiarek Dep., ECF No. 32-13, Page ID 152-53.[4] No evidence has been presented that Rozmiarek submitted a written accommodation request. In May 2016, Teff moved to a different department and was no longer Rozmiarek's supervisor.

Early in his employment, Rozmiarek began raising complaints to McCallie and Teff about unsafe placement of ladders in the meat department. *Id.* at 144-45. Rozmiarek never raised concerns regarding the ladders with Goldapp or Plash. *Id.* at 159. McCallie, Teff, and Plash testified they had no knowledge of Rozmiarek's complaints about ladder placement before Rozmiarek raised such concerns at his termination meeting. McCallie Decl., ECF No. 32-4, Page ID 97; Plash Decl., ECF. No. 32-3, Page ID 93; Teff Decl., ECF. No. 32-2, Page ID 90.

---

[3] In Teff's Declaration, he testified that his conversation with Rozmiarek about the butcher coat took place soon after the policy change. ECF No. 32-2, Page ID 90. Rozmiarek testified at his deposition that the conversation took place prior to his April 2016 performance evaluation. Rozmiarek Dep., ECF No. 32-13, Page ID 152.

[4] Rozmiarek's brief states only that, "Plaintiff was informed by [T]eff that [T]eff would see if plaintiff could get a shorter pharmacy coat that would not get stuck in his wheelchair. (Ex. 13, 82: 6-12)." ECF No. 38, Page ID 180. The only lines on page 82 that mention the pharmacy coat are 18-20 which state, "I was under the assumption that [Teff] was taking care of it and finding out all about this pharmacy coat or whatever we talked about." Rozmiarek Dep., ECF No. 32-13, Page ID 152.

Walmart maintained a Coaching for Improvement Policy designed to provide instruction and assistance when an associate's job performance failed to meet Walmart's reasonable expectations and standards or when an associate's conduct violated a company policy. On October 19, 2015, Rozmiarek received his first coaching to address his cursing at an associate, his accusing others of not performing their duties, and his intentional toppling of a cart full of meat, leaving chicken on the floor. On February 4, 2016, Rozmiarek received a second coaching for smoking just outside the food entrance instead of the designated smoking area. On or about April 22, 2016, Rozmiarek received a performance evaluation from his Manager Teff and Supervisor Linda Warecki. Performance Evaluation, ECF No. 32-17, Page ID 166. Rozmiarek received an overall performance rating of "Needs Improvement." *Id.* Rozmiarek's evaluation mentioned that Rozmiarek needed to prioritize his work to get it done in a correct and efficient manner, needed to be more respectful of other associates, needed to make sure all products were pulled off the shelves before their expiration, and needed to make sure all cases were clean. *Id.* at 167. The performance evaluation stated, underlined with an asterisk, the need for Rozmiarek "to wear a white coat at all times when on the floor." *Id.* On May 12, 2016, Rozmiarek received a subsequent coaching for again failing to use the designated smoking area. Consistent with Walmart's policy, this third coaching expressly stated that the next level of action would be termination.

On June 16, 2016, Rozmiarek was terminated. Exit Interview, ECF No. 19, Page ID 169. Walmart listed the reason for his termination as "Inability to Perform [his] Job." *Id.* Plash made the decision to terminate Rozmiarek's employment, in consultation with Goldapp. Plash Decl., ECF No. 32-3, Page ID 93. Plash testified that "[t]he week of June

16, 2016, [Plash] both observed and heard from other supervisors that Mr. Rozmiarek was again failing to maintain the meat counter as required of him for several days in a row." *Id*. He also testified that the decision was made, "[b]ecause Mr. Rozmiarek had demonstrated similar behavior in the past, and because he had already received numerous verbal coachings and three written coachings regarding his job performance." *Id*. At the termination meeting, Plash noted Rozmierek's failure to wear the required butcher coat, but Plash maintains that Rozmierek's failure to wear the coat was not the basis for the termination decision. *Id*. Plash also testified that he "was unaware that Mr. Rozmiarek had any alleged issues with wearing a [butcher] coat, or that he had requested an accommodation, until he mentioned it at the end of the termination meeting." *Id*.

Rozmiarek testified that he was called into the office and told he was being terminated. Rozmiarek Depo., ECF No. 32-13, Page ID 148. When he asked why he was being termination, allegedly he was told "because you weren't wearing your meat coat." *Id*. Rozmiarek also testified that he tried to explain at the termination meeting that he couldn't wear the butcher coat because it got stuck in his wheelchair. *Id*. at 155. Rozmiarek alleges that he was told "I don't want to hear it, you're not wearing the coat, you're gone, it's a Wal-Mart policy."[5] *Id*. Rozmiarek also testified that at the termination meeting he told Plash and Goldapp that Teff knew about the issue with the coat and "told [Rozmiarek] a couple of weeks ago that [Teff] was going to check into things."[6] *Id*.

---

[5] Rozmierek's actual testimony was "I told them, I said. I can't wear the coat because it gets caught in my chair. I don't want to hear it, you're gone, it's a Wal-Mart policy." Rozmiarek Depo., ECF No. 32-13, Page ID 155. It is clear from the context that Rozmiarek was referring in part to what was said to him.

[6] Rozmiarek also testified that during his termination meeting he said "[Teff] knew about the white coat. and was supposed to check on – about either do I have to wear it or getting a shorter one. And I was told, I don't care, you're gone." Rozmiarek Depo., ECF No. 32-13, Page ID 154-55.

On September 22, 2017, Rozmiarek filed a Complaint, ECF No. 1, alleging Walmart failed to make reasonable accommodations for his disability, by requiring him to wear a butcher coat that got stuck in his wheelchair, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1104 (Counts 1 and 2). Rozmiarek claims his termination was unlawfully motivated by his disability in violation of § 12112 of the ADA and § 48-1104 of NFEPA (Counts 3 and 4). Rozmiarek also claims he was unlawfully terminated in retaliation for requesting an accommodation for his disability, in violation of § 12203 of the ADA and § 48-1114 of NFEPA. (Counts 5 and 6). Finally, he claims he was unlawfully terminated in retaliation for reporting recognizable safety hazards—the butcher coat as well as ladder placement—in violation of §29 U.S.C. 654(a) and Neb. Rev. Stat. §48-1114(3) (Count 7).

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920,

923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

## I. Disability Discrimination (Counts 1, 2, 3, and 4)

### A. Rozmiarek's Termination

The ADA prohibits a covered employer from discriminating against "a qualified individual on the basis of disability. . . ." 42 U.S.C. § 12112(a).[7] To establish a prima facie case of discrimination based on disability, Rozmiarek must show that he is "'(1) disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability.'" *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 905 (8th Cir. 2015) (quoting *Kallail v. Alliant Energy Corp. Servs.*, Inc., 691 F.3d 925, 930 (8th Cir. 2012).

"In the absence of direct evidence of discrimination, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to disability-

---

[7] The disability discrimination provisions of NFEPA are patterned after the ADA, and Nebraska courts look to federal ADA decisions when constructing NFEPA. *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002). The Court therefore employs the same analysis to determine Rozmiarek's claims under both the ADA and NFEPA.

discrimination claims of disparate treatment."[8]  *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016) (citation omitted). Under this framework, once the plaintiff has satisfied the burden of establishing a prima facie case of disability discrimination, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id.* If such a reason is articulated, the employee must show it is a pretext for discrimination. *Id.* For the purposes of summary judgment, Walmart does not dispute that Rozmiarek is a qualified employee with a disability. Def.'s Reply Br., ECF No. 41, Page ID 196.

To establish causation, Rozmiarek must show that his alleged disability was a motivating factor in the decision to terminate him. *Oehmke, 844 F.3d* at 756-57 (stating "a mixed-motive causation standard" applies); *but see id.* at 757 n.6 (stating, without holding, that a more demanding but-for causation standard is arguably appropriate). Disability discrimination claims based on disparate treatment require proof of discriminatory intent. *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014) (citations omitted).

Rozmiarek points the Court to his testimony that he was told he was being terminated due to his failure to wear the required butcher coat. Rozmiarek Depo, ECF No. 32-13, Page ID 148, 154-55. The parties do not contest that Walmart's policy at the time required Rozmiarek to wear the butcher coat. Teff Decl., ECF No. 32-2, Page ID 90. It is also uncontested that Rozmiarek had a conversation with Teff prior to the termination

---

[8] Direct evidence is evidence that establishes a specific link between alleged discriminatory animus and an adverse action of such causal strength that the plaintiff can forgo the burden shifting framework. *Oehmke,* 844 F.3d at 755 n. 3 (citing *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012).

meeting where Rozmiarek informed Teff that Rozmiarek did not consistently wear his butcher coat because the coat sometimes got caught in his wheelchair. *Id.* Rozmiarek does not dispute that he never informed Plash or Goldapp, the individuals involved with Rozmiarek's termination, about his difficulty with the coat until the termination meeting, after the decision to terminate him was made. Rozmiarek Depo, ECF No. 32-13, Page ID 148, 154. Plash testified that, before the termination meeting, he was unaware of any alleged issues with Rozmiarek wearing the coat. Plash Decl., ECF No. 32-3, Page ID 93. There is no evidence that Goldapp was aware of Rozmiarek's issue with the butcher coat.

Rozmiarek has not established a prima facie case of discrimination under the ADA or NFEPA[9] on Counts 3 and 4 because he did not provide evidence of a causal connection between his alleged disability and Walmart's decision to end his employment. There is no evidence that Rozmiarek's disability motivated Plash or Goldapp to terminate him. Because disparate treatment cases require proof of discriminatory intent, Rozmiarek's disparate-treatment claims fail.

### B. Failure to Accommodate

Under the ADA, an employer must make "reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112 (5)(A). Failure-to-accommodate claims are not evaluated under the burden-shifting

---

[9] *See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1106 n.2 (8th Cir. 2016) ("Because disability-discrimination claims under the NFEPA are analyzed under the same framework as claims brought under the ADA, we need not conduct a separate analysis of Morriss's state-law claims.").

framework of *McDonnell Douglas* because a claim against an employer for failure to accommodate does not turn on the employer's intent or actual motive. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). Unlike a disparate-treatment claim, a failure-to-accommodate claim does not require proof of discriminatory intent. *Withers*, 763 F.3d at 1003 (citations omitted). A plaintiff in a failure-to-accommodate case must establish a prima facie case of disability discrimination, and must also establish a failure to accommodation the disability. *Schaffhauser,* 794 F.3d at 905.

Failure-to-accommodate claims also require "'a showing of a causal connection between the accommodation and the disabled employee, so the employee would be denied the employment benefit but for the accommodation.'" *Kaiser v. Gallup, Inc.*, No. 8:13cv218, 2015 WL 1626591, at *4 (D. Neb. April 13, 2015) (quoting *Peebles*, 345 F.3d at 771 (Bye, K., concurring)). A plaintiff also has the burden to show that the requested accommodation was reasonable. *Peebles*, 354 F.3d at 768 (citing *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002)).

Rozmiarek alleges that his requested accommodation—not wearing a butcher coat—was needed to enable him to use his wheelchair. Rozmiarek Depo, ECF No. 32-13, Page ID 155. He testified at his deposition that he was informed at the termination meeting that he was being terminated for not wearing the butcher coat. *Id.* at 148, 154-55. It is undisputed that Rozmiarek's failure to wear the butcher coat was noted in his employment evaluation and discussed at the termination meeting. Performance Evaluation, ECF No. 32-17, Page ID 167; Plash Decl., ECF No. 32-3, Page ID 93. Therefore, there exists a material question of fact as to whether Rozmiarek was terminated for his failure to wear the butcher coat or for other performance deficiencies.

Walmart argues that Rozmiarek's failure-to-accommodate claim is barred because he did not fill out an ADA reasonable-accommodation form. Def.'s Br., ECF No. 31, Page ID 78. "'To determine the appropriate reasonable accommodation, it may be *necessary* for the [employer] to initiate an informal, interactive process with the [employee] . . . in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)) (emphasis in original). To show that an employer did not engage in the interactive accommodation process, the employee must prove: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Shaffhauser*, 794 F.3d at 906 (citing *Peyton v. Fred's Store of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). When requesting an accommodation, "[a]n employee is required only to 'provide[ ] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for accommodation.'" *Kowitz v. Trinity Health*, 839 F.3d 742, 748 (8th Cir. 2016) (quoting *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002)). "This determination necessarily accounts for the employer's knowledge of the disability . . . and is not limited to the precise words spoken by the employee at the time of the request." *Id.*

It is undisputed that Rozmiarek informed Teff that he did not consistently wear his butcher coat because it got stuck in his wheelchair. Teff Decl., ECF No. 32-2, Page ID

90. Teff testified that he told Rozmiarek "to request an accommodation through Human Resources if needed." *Id.* Rozmiarek testified that Teff told him he was going to "check into things" and "not to worry. You know, if it's getting caught up and causing [Rozmiarek] problems, don't wear it." Rozmiarek Depo., ECF No. 32-13, Page ID 153-55. Rozmiarek also testified that Teff was supposed to be checking on whether he would have to wear the butcher coat or a shorter coat. *Id.* at 154-55. Walmart's policy states "[y[ou may request a job adjustment or reasonable accommodation, at any time by telling any salaried member of management in your facility or an HR representative that, because of your condition, you need help to do your job . . . ." Walmart Policy, ECF 32-9, Page ID 120. The policy goes on to state, "[t]o help with your request for an accommodation due to a disability, you will be given a Request for Accommodation Packet . . . ." *Id.*

Material questions of fact remain as to (1) whether Teff referred Rozmiarek to Human Resources or whether Teff led Rozmiarek to believe Teff would follow up on Rozmiarek's request for accommodation, and (2) what weight, if any, Wallmart gave to Rozmiarek's failure to wear the butcher coat when Wallmart decided to terminate his employment.

Accordingly, Walmart has failed to demonstrate that it is entitled to judgment as a matter of law on Rozmiarek's failure-to-accommodate claims.

### III. Retaliation (Counts 5 and 6)

Rozmiarek claims Walmart terminated his employment in retaliation for his request for an accommodation, in violation of §12203 of the ADA and § 48-1114 of NFEPA. (Counts 5 and 6). Rozmiarek also claims Walmart terminated his employment in retaliation for his reporting of safety hazards—the butcher coat getting caught in his

wheelchair and the allegedly unsafe ladder placement—in violation of §48-1114 of the NFEPA as it relates to §29 U.S.C 654(a). (Count 7).

"The ADA provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter.'" *Oehmke,* 844 F.3d at 758 (quoting 42 U.S.C. § 12203(a)). Neb. Rev. Stat. §48-1114 states that it shall be an unlawful employment practice for an employer to discriminate against any of his or her employees because he or she has opposed any practice made unlawful by the Nebraska Fair Employment Practice Act or has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state. Section 29 U.S.C 654(a) requires an employer to comply with occupational safety and health standards and to furnish to employees "a place of employment . . . free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . . ."

To establish a prima facie case of unlawful retaliation, Rozmiarek must show he participated in a protected activity, Walmart took an adverse employment action against him, and a causal connection exists between the protected activity and the adverse employment action. *Reyes v. Pharma Chemie, Inc.*, 890 F. Supp.2d 1147, 1167 (D. Neb. 2012) (citing *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012)); *Oehmke,* 844 F.3d at 758 (citing *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013)). Retaliation claims under both NFEPA and the ADA follow the same direct evidence or *McDonnell Douglas* burden-shifting analysis employed in discrimination claims. *Oehmke,* 844 F.3d at 758 (citing *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014)); *Reyes,* 890 F. Supp.2d at 1167.

Walmart argues it is entitled to summary judgment because Rozmiarek cannot demonstrate a causal connection between the statutorily protected activity and the adverse employment action—Rozmiarek's termination. There is no direct evidence that Walmart terminated Rozmiarek because of his request for accommodation or because he voiced safety concerns. Rozmiarek himself contends that he was fired for not *wearing* his butcher coat, not for making a *request* that he not be required to do so. There is no evidence that Plash or Goldapp, the individuals involved in Rozmiarek's termination, had knowledge of Rozmiarek's request for accommodations or his voicing of safety concerns until his termination meeting, after the decision was made to terminate him.[10] *See Couch v. Sprint Corp.* 131 F.3d 764, 765 (8th Cir. 1997) (Affirming district court's grant of judgment of a matter of law in favor of employer on a retaliation claim where employee failed to show the decision-maker knew employee had made a gender discrimination complaint.).

With respect to Rozmiarek's safety complaints about the ladder, he testified that these concerns were voiced only to Teff and McCallie. Rozmiarek Depo., ECF No. 32-13, Page ID 145, 159. Rozmiarek testified that his concerns were ignored, and he eventually gave up. *Id.* at 146. Rozmiarek did not present evidence of any negative repercussions because of his concerns. Rozmiarek presented no evidence that Walmart failed to adhere to established company policies. Rozmiarek presented no evidence that he was treated differently than similarly situated individuals who had not made

---

[10] Rozmiarek argues that the performance evaluation provided notice of his concerns regarding the butcher coat. However, the performance evaluation stated only that he needed to wear the coat at all times when on the floor. Performance Review, ECF. No. 32-17, Page ID 167.

accommodation requests or voiced safety concerns. In fact, Rozmiarek testified that *everyone* complained about the ladders. *Id.* at 147.

Rozmiarek argues that the proximity between his protected activity and termination weighs in favor of a finding of retaliation. However, during his deposition he testified that he began raising safety complaints about the ladders soon after he started work. *Id.* at 146. With respect to his safety concerns about the butcher coat and his request for accommodations, he testified that his conversation with Teff took place before the meeting regarding his performance evaluation on April 24, 2016, but he did not specify a date. *Id.* at 152 Hence, there were at least 45 days between his complaint about the coat and his termination, and, generally, more than a temporal proximity is required to establish a causal connection. *Smith v. Allen Health Sys, Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)).

Because Rozmiarek's protected activity cannot be causally connected to the decision to terminate his employment, which was made before the decision-makers had knowledge of the protected activity,[11] Walmart is entitled to summary judgment on Rozmiarek's claims of retaliation under §12203 of the ADA and § 48-1114 of the NFEPA.[12]

---

[11] *See Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1143 (8th Cir. 2008) (No causal connection where decision makers were not aware employee had filed EEOC charges when they decided to disqualify for a position.); *see also Guzman v. Brown County*, 884 F.3d 633, 643 (7th Cir. 2018) (Lack of causal connection where decision maker was unaware of employee's asserted need for accommodation.).

[12] *See Ludlow v. BNSF Ry., Co.*, 4:12CV3113, 2013 WL 3872930 *17 (D. Neb. July 24, 2013) (NFEPA is patterned after Title VII making it appropriate to look to federal court decisions construing similar and parent federal legislation when analyzing the NFEPA; plaintiff cannot establish a prima facie case of retaliation by showing that supervisors who were not decision makers were aware of his protected conduct.).

Accordingly,

IT IS ORDERED:

The Motion for Summary Judgment, ECF No. 30, filed by Walmart is granted, in part as follows:

> Counts 3, 4, 5, 6, and 7 of Rozmiarek's Complaint, ECF No. 1, are dismissed, with prejudice, and

The Motion is otherwise denied.

Dated this 5th day of October, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge
